**NOT FOR PUBLICATION**                                                                                                          **CLOSED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                              :
ILDA GONZALEZ,                                     :
                                                              :
                         Plaintiff,                        :
                                                              :    Civil Action No. 08-1443
                                                              :
            v.                                                 :
                                                              :    **OPINION & ORDER**
MICHAEL J. ASTRUE,                              :
COMMISSIONER OF SOCIAL SECURITY, :
                                                              :    Dated: February 4, 2009
                         Defendant.                    :
_____:

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff Ilda Gonzalez's motion to review a final determination of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

**I. BACKGROUND**

**A.      Plaintiff's Medical And Vocational History**

Plaintiff is a 45-year old woman with a 6th grade education. (Tr. 444.) She has a limited employment record, reporting that she last worked in 2001 as a babysitter for her four grandchildren, earning $9,975 for the year. (Tr. 48, 50, 446-47.) Prior to babysitting, Plaintiff provided cleaning services in a hospital, office building, and hotel. (Tr. 448-52.) She alleges she

1

became disabled on September 25, 2003 due to depression, HIV infection, sleep apnea, and hypothyroidism. (Tr. 75-76.)

Plaintiff has received regular counseling for depression symptoms since her HIV diagnosis in September 2003. (Tr. 228-89.) On December 9, 2003, Donald Moorehead, Psy.D., conducted a consultative psychiatric evaluation of Plaintiff at the request of the Social Security Administration. (Tr. 127-30.) Although her mood was depressed, Dr. Moorehead found her thought processes were goal directed; her attention, concentration, and recent and remote memory skills were intact; and her insight and judgment appeared fair. He saw no evidence of hallucinations, delusions, or paranoia. (Tr. 129.) Dr. Moorehead diagnosed Plaintiff with major depressive disorder, severe, without psychotic features, dysthemic disorder, generalized anxiety disorder, and post traumatic stress disorder. (Tr. 130.) Overall, he concluded that Plaintiff was cognitively capable of following and understanding simple directions and instructions, learning and performing simple tasks, and maintaining attention and concentration. (Tr. 130.)

On January 23, 2004, Kusum Walia, Ph.D., a state agency consultant, reviewed Plaintiff's medical record and completed a Psychiatric Review Technique form, rating Plaintiff's work and living impairments. (Tr. 137-50.) Dr. Walia found that Plaintiff had mild limitations in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (Tr. 147.) Considering these impairments, Dr. Walia concluded that Plaintiff's mental impairment was not severe. (Tr. 137.)

On December 15, 2004, Jan S. Cavanaugh, Ph.D., conducted a second consultative psychiatric examination of Plaintiff. (Tr. 159-62.) She found Plaintiff's manner of relating, social skills, and overall presentation adequate. (Tr. 160.) Plaintiff's mood was depressed, but

her attention, concentration, and memory skills were intact.  Her insight and judgment were good; her thought processes were coherent and goal directed.  (Tr. 161.)  Dr. Cavanaugh diagnosed Plaintiff with adjustment disorder with depressed mood, chronic.  (Tr. 162.)  Overall, Dr. Cavanaugh opined that Plaintiff was capable of understanding and following simple instructions, performing simple tasks, maintaining attention and concentration, and interacting appropriately with others.  She found Plaintiff capable of attending to a schedule, but limited in her ability to deal with stress.  (Tr. 162.)

On February 16, 2005, Janice Drucker, M.D., a state psychiatric consultant, reviewed Plaintiff's medical records and rated her functional limitations.  (Tr. 175-88.)  Like Dr. Walia, Dr. Drucker found Plaintiff had mild limitations in activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence or pace.  Dr. Drucker found no evidence of repeated episodes of deterioration of extended duration.  (Tr. 185.)  Overall, Dr. Drucker concluded that Plaintiff suffered no significant limitations of any mental activity except for moderate limitations in responding appropriately to changes in the work setting.  (Tr. 189-90.)  Dr. B. Tam, another state medical consultant, concurred with Dr. Drucker's opinion on July 7, 2005.  (Tr. 191.)

Most recently, on December 11, 2006, Ernesto L. Perdomo, Ph.D, performed a psychological exam at Plaintiff's home at the request of her representative, Legal Services of New Jersey.  (Tr. 344-48.)  Dr. Perdomo found Plaintiff's thought processes "organized and focused," with no indication of thought disorder.  Her concentration and memory were fair.  (Tr. 347.)  Dr. Perdomo diagnosed Plaintiff with dysthymic disorder and personality disorder not otherwise specified with self-defeating characteristics.  (Tr. 347-48.)  He opined that her HIV

3

status and chronic depression may affect her ability to function effectively at work.  (Tr. 347.)

Plaintiff was first diagnosed with HIV on September 25, 2003, and has received treatment since that date.  (Tr. 453.).  Plaintiff's treatment records describe her HIV infection as "stable," (Tr. 266), and show an increase in her CD4 cell rate from 431 in July 2004 to 706 in March 2006.  (Tr. 253, 413.)

Plaintiff was diagnosed with sleep apnea on August 2, 2004.  (Tr. 151.)  This condition is being treated with the use of a CPAP machine.  Plaintiff's medical records indicate that she has responded well to this treatment, which has alleviated most of her respiratory symptoms.  (Tr. 152.)  Plaintiff was also diagnosed with hypothyroidism, but this condition has been treated with medication.  (Tr. 266.)

Raed Hattab, M.D., a consultative physician, examined Plaintiff on December 15, 2004 at the request of the Social Security Administration.  (Tr. 163-66.)  Dr. Hattab diagnosed Plaintiff with HIV, depression and anxiety disorder, hypothyroidism, and sleep apnea, but he found that overall, Plaintiff had no physical limitations.  (Tr. 165.)  He noted that Plaintiff denied any symptoms from her HIV.  (Tr. 163.)

Reviewing Plaintiff's medical records, B. Sarnoff, a state medical consultant, prepared a physical residual functional capacity assessment on February 14, 2005.  (Tr. 167-74.)  Sarnoff determined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, and that she could sit, stand and/or walk for six hours in an eight-hour day.  (Tr. 168.)  He concluded that Plaintiff "retains the RFC to return to any of her former jobs."  (Tr. 174.)  Burton Gillette, M.D., concurred with this assessment on July 7, 2005.  (Tr. 174.)

**B.     Procedural History**

On September 22, 2004, Plaintiff filed an application for Supplemental Security Income benefits, alleging an inability to work since September 25, 2003 due to HIV infection, hypothyroidism, sleep apnea, and depression. (Tr. 75-76.) This application was denied initially (Tr. 35-38), and on reconsideration. (Tr. 31-33.) Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 34.) The hearing convened on November 15, 2006 before ALJ Donna A. Krappa; Plaintiff, with her representative, appeared and testified at the hearing. (Tr. 440). In a decision dated March 21, 2007, the ALJ found that Plaintiff was not disabled and was thus not entitled to benefits. (Tr. 10-18.) The decision of the ALJ became the final decision of the Commissioner on January 18, 2008, when the Appeals Council denied Plaintiff's request for review. (Tr. 5-7.) Plaintiff brought this action on March 22, 2008, seeking modification of the Commissioner's decision or remand to the Commissioner for reconsideration. (Compl. ¶ C.)

**C.     The Disability Standard And The Decision Of The ALJ**

1.     <u>The Statutory Standard For A Finding Of Disability</u>

An individual is considered disabled under the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be

deemed disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant meets this definition of disability, the Commissioner applies the following sequential analysis prescribed by Social Security regulations, 20 C.F.R. § 416.920(a):

Step One: Substantial Gainful Activity.  The Commissioner first considers whether the claimant is presently employed, and whether that employment is substantial gainful activity.  If the claimant is currently engaged in substantial gainful activity, the claimant will be found not disabled without consideration of her medical condition.  20 C.F.R. § 416.920(b).

Step Two: Severe Impairment.  If the claimant is not engaged in substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or combination of impairments considered severe.  A "severe impairment" is one "which significantly limits [the claimant's] physical or mental capacity to perform basic work activities."  If the claimant does not demonstrate a severe impairment, she will be found not disabled.  20 C.F.R. § 416.920(c).

Step Three: Listed Impairment.  If claimant demonstrates a severe impairment, the Commissioner will then determine whether the impairment meets or equals an impairment listed on the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the claimant has such an impairment, she is found disabled.  If not, the Commissioner proceeds to the fourth step.  20 C.F.R. § 416.920(d).

Step Four: Residual Functional Capacity.  At Step Four, the Commissioner determines

whether, despite her impairment, the claimant retains the residual functional capacity ("RFC")[1] to perform her past relevant work. If so, the claimant is found not disabled and the inquiry proceeds no further. If not, the Commissioner proceeds to the fifth step. 20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work. If the claimant is unable to perform her past work, the Commissioner considers the individual's RFC, age, education, and past work experience to determine if she is able to make an adjustment to other work. If she cannot do so, the claimant is found disabled. 20 C.F.R. § 416.920(g).

This five-step analysis involves shifting burdens of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). The claimant bears the burden of persuasion through the first four steps. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). If the analysis reaches the fifth step, however, the Commissioner bears the burden of proving that the claimant is able to perform other work available in the national economy. Id.

2.     The ALJ's Decision

Applying this five-step analysis, and upon review of the entire record, the ALJ first found that Plaintiff had not engaged in substantial gainful activity since September 25, 2003. (Finding 1, Tr. 15.) At step two, the ALJ determined that Plaintiff suffers from a combination of physical impairments considered severe[2] (Finding 2, Tr. 15), but at step three found that her condition did not meet or equal an impairment or combination of impairments listed in Appendix 1 of the

---

[1]     RFC designates the claimant's ability to work on a sustained basis despite her physical or mental limitations. The RFC determination is not a decision as to whether a claimant is disabled, but is used as the basis for determining the particular types of work a claimant may be able to perform despite her impairment(s). See 20 C.F.R. § 416.945.

[2]     Specifically, the ALJ found that Plaintiff suffers from the following severe impairments: HIV infection, sleep apnea, and a history of hypothyroidism. (Finding 2, Tr. 15.)

Social Security regulations.[3]  (Finding 3, Tr. 16.)

At step four, the ALJ determined that Plaintiff retained the RFC to perform medium work.[4]  (Finding 4, Tr. 16.)  Comparing this RFC with the physical and mental demands of her past work, the ALJ found that Plaintiff is able to perform her past relevant work as a babysitter. (Finding 5, Tr. 18.)  Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act, and consequently denied her application for benefits. (Finding 6, Tr. 18.)

## II.  DISCUSSION

**A.**     **Standard Of Review**

This Court reviews the decision of the Commissioner to determine whether there is substantial evidence in the administrative record supporting his decision.  42 U.S.C. § 405(g); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based

---

[3]     In making this finding, the ALJ cited Listing 14.08 (human immunodeficiency virus infection). (Finding 3, Tr. 16.)  The ALJ explained that Listing 14.08 was not met because there was no evidence of significant infections, malignant neoplasms, conditions of the skin or mucous membranes, anemia related to HIV, wasting syndrome, or neurological, cardiac, or kidney abnormalities.  (Id.)  Plaintiff has not challenged the ALJ's finding on this issue.

[4]     Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds and the ability to stand and/or walk for a total of about six hours in an eight-hour workday.  If someone can do medium work, it is reasonable to conclude that she may also do sedentary and light work. 20 C.F.R. § 416.967(c).

on the record.  Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

**B.      Review Of The Commissioner's Decision**

Plaintiff challenges the decision of the Commissioner on grounds that the ALJ's denial of benefits is not supported by substantial evidence.  Specifically, she argues that the ALJ erred by: (1) finding that her alleged depression is not severe, (Pl. Br. 9-10); and (2) deciding that she is capable of performing her past relevant work as a babysitter.  (Pl. Br. 10-19.)  The Court will consider each argument in turn.

      1.      Plaintiff's Depression

The ALJ's determination at step two that Plaintiff's depression does not constitute a severe impairment is well supported by the record.  As noted above, an impairment is not severe if it does not significantly limit an individual's ability to perform basic work activities.[5]  20 C.F.R. § 416.921(a).  Under the Social Security regulations, the limitations imposed by an individual's mental impairments are assessed by rating four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 416.920a(c)(3).  If the degree of limitation is rated as "none" or "mild" in the first three functional areas, and "none" in the fourth functional area, generally the impairment is considered nonsevere.  20 C.F.R. § 416.920a(d)(1).

Here, both state agency consultants that evaluated Plaintiff's mental condition – Dr.

---

[5]    Basic work activities are the abilities and aptitudes necessary to do most jobs.  Examples include capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; dealing with changes in a routine work setting; responding appropriately to supervision, co-workers, and usual work situations; as well as physical abilities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling.  20 C.F.R. § 416.921(b).

Walia in January 2004 and Dr. Drucker in February 2005 – found Plaintiff to have only "mild" limitations in the first three functional areas.  Neither found evidence of episodes of decompensation.  (Tr. 147, 185.)  These ratings are consistent with the ALJ's finding that Plaintiff's depression is not a severe impairment.  (See Finding 2, Tr. 15-16).

Consultative mental status examinations further support the ALJ's finding.  As noted in the ALJ's decision, Dr. Moorehead and Dr. Cavanaugh found that although Plaintiff's mood was depressed, her thought processes were coherent and goal-directed, her attention and concentration were intact, and her judgment and insight were fair to good.  (Tr. 129, 159; see also Finding 2, Tr. 15.)  Both concluded that Plaintiff is capable of understanding and following directions, performing simple tasks, and maintaining attention.  (Tr. 130, 161-62.)  More recently, Dr. Perdomo confirmed that Plaintiff is able to understand and follow instructions.  (Tr. 346.)  Dr. Perdomo similarly found Plaintiff's thought process "organized and focused," with no indication of thought disorder or psychosis.  Her short-term memory appeared good; her concentration fair.  (Tr. 346.)  Simply put, none of the examining physicians corroborated with medical evidence Plaintiff's claim of depression severe enough to significantly limit her ability to perform basic work activities.  (See Pl. Br. 9.)  Reviewing the medical record as a whole, substantial evidence supports the ALJ's conclusion that Plaintiff's depression does not preclude her return to work.

    2.    Plaintiff's Past Relevant Work

The ALJ found at step four that Plaintiff retains the RFC to perform her past relevant work as a babysitter.  (Finding 5, Tr. 18.)  Plaintiff argues this was an error because (1) her prior babysitting experience should not be considered "past relevant work" because it was not

"substantial gainful activity;" and (2) the ALJ did not adequately consider the physical and mental demands of childcare work when comparing it to Plaintiff's RFC.

Past relevant work is work performed within the last 15 years that lasted long enough for the claimant to learn to do it, and that was substantial gainful activity. 20 C.F.R. § 416.965(a). "Substantial" work involves significant physical and mental activities; "gainful" work is performed for pay or profit. 20 C.F.R. § 416.972.

Here, Plaintiff's babysitting work was performed in 2001 and lasted at least three months. (Tr. 53, 70.) Plaintiff states in her brief that she earned $9,242.00 from babysitting in 2001, an average of $778.50 per month. (Pl. Br. 12.) Under the Social Security regulations, average monthly earnings of $740.00 in calendar year 2001 are presumed to represent substantial gainful activity. 20 C.F.R. §§ 416.974(b), 416.975(a)(1) and (c)(1); POMS § DI 10501.015B. Accordingly, Plaintiff's babysitting work is presumptively substantial gainful activity.

Plaintiff attempts to overcome this presumption by arguing that her earnings as a babysitter should be reduced by the value of the assistance allegedly provided by her son. (Pl. Br. 12-13.) However, Plaintiff offered no evidence showing what services her son provided or demonstrating the value of those services. With no support for her allegations, Plaintiff cannot overcome the presumption that her babysitting work was gainful. Thus, the ALJ properly considered her prior experience as a babysitter as past relevant work.

Finally, Plaintiff argues that in finding her capable of performing this past work, the ALJ did not adequately assess the physical and mental requirements of babysitting. (See Pl. Br. 15 (arguing that there is "no evidence at all in the record" as to how the job of babysitter is performed).) This contention ignores evidence that Plaintiff herself provided. In her work

11

history report dated December 3, 2003, Plaintiff described her babysitting duties as including feeding, bathing, cleaning, caring for and playing with her grandchildren.  According to Plaintiff, the work required standing for eight and one-half hours, walking for 30 minutes, and sitting for 90 minutes each day.  It also required lifting twenty to twenty-five pounds.  (Tr. 71.)  Plaintiff's descriptions of her work as a babysitter are consistent with the Social Security regulations' definition of medium work, 20 C.F.R. § 416.967(c), which the ALJ determined Plaintiff capable of performing.[6]

### III.  CONCLUSION

For the reasons set forth above, and after careful review of the record in its entirety, the Court finds that the ALJ's conclusion that Plaintiff is not disabled is based on substantial evidence.  Accordingly, this Court will **AFFIRM** the Commissioner's decision to deny Plaintiff Social Security benefits.

Therefore, **IT IS** on this 4th day of February, 2009, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

                                                                   /s/ **Faith S. Hochberg**
                                                                   Hon. Faith S. Hochberg, U.S.D.J.

---

[6] Although Plaintiff does not appear to contest it, the Court notes that the ALJ's determination that Plaintiff retains the RFC to perform medium work is supported by substantial evidence.  As noted in the ALJ's decision, Dr. Hattab found Plaintiff suffered from no physical limitations.  (Tr. 165; Finding 4, Tr. 17.)  Plaintiff was observed to have normal gait and motor behavior by Dr. Moorehead in December 2003 and Dr. Cavanaugh in December 2004.  The ALJ's finding is further supported by the opinion of the state agency examiner, who found in February 2005 that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently, and that she could sit, stand and/or walk for six hours in an eight-hour day.  (Tr. 168.)